[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 29, 2002
THOMAS K. KAHN
CLERK

————————————————

Nos. 01-11062 & 01-11457

————————————————

D. C. Docket  No. 97-00940-CV-RWS-1

TINA GRIFFITH,

Plaintiff-Appellant-
Cross-Appellee,

versus

GENERAL MOTORS CORPORATION,

Defendant-Appellee-
Cross-Appellant.

————————————————

No. 01-12408

————————————————

D. C. Docket No. 97-00490-CV-RWS-1

TINA GRIFFITH,

Plaintiff-Appellant,

versus

GENERAL MOTORS CORPORATION,

Defendant -Appellee.

Appeals from the United States District Court
for the Northern District of Georgia
_____
**(August 29, 2002)**

Before EDMONDSON, Chief Judge, HILL and LAY*, Circuit Judges.

HILL, Circuit Judge:

There are three appeals before us in this case. In the first, Tina Griffith appeals the judgment against her in her action against General Motors for damages for injuries she sustained as the result of an alleged automotive design defect. In a related but separately filed case, she appeals the denial of her post-trial motions for relief from judgment and for contempt and sanctions against General Motors. Finally, General Motors appeals the denial of its pre-trial motion for summary judgment on the grounds that Griffith's seatbelt claim is preempted by federal law.

## I.

On the afternoon of April 16, 1995, Tina Griffith was riding in the cab of a 1990 Chevrolet Silverado C1500 pickup truck equipped with a bench seat. Griffith was seated in the Silverado cab's front center seat. Her husband was

_____

*Honorable Donald P. Lay, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

driving and her daughter was on her other side.

The Silverado cab contained seat belts for all three seating positions. The driver's and right passenger's positions were equipped with lap-shoulder belts; the center position was equipped with a lap belt only. All passengers were wearing their seat belts.

As the truck traveled along the highway, another vehicle, traveling in the opposite direction, lost its rear wheel, rotated counterclockwise, and skidded across the center line directly into the front end of the Silverado. Griffith sustained serious injuries as a result of this crash.

Griffith filed this action against General Motors on April 9, 1997. She alleged, among other things,[1] that the Silverado's seatbelt system was defective because of the lap belt only design for the center occupant, and that General Motors failed to warn her of the danger of this design.

Prior to trial, General Motors filed a motion for summary judgment as to Griffith's defective seat belt claim, contending that this claim is impliedly pre-

---

[1]Griffith also alleged that the Silverado had a defectively designed dashboard (inadequate padding), seat pan (not antisubmarining), and seat belt stalks (attached to the vehicle floor). The district court granted General Motors judgment as a matter of law on these claims at the end of Griffith's case. She does not appeal these judgments.

empted by Federal Motor Vehicle Safety Standard 208 ("FMVSS 208"), 49 C.F.R. § 571.208, which was promulgated by the Department of Transportation (the "DOT") under the authority of the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"). The district court denied the motion.

At the close of her case, the district court granted judgment as a matter of law to General Motors on all of plaintiff's claims except the defective seatbelt claim. The jury returned a verdict for General Motors on this claim. Griffith appeals the district court's judgment against her on the failure to warn claim, and alleges several trial errors in connection with her defective seat belt claim. General Motors appeals the denial of its motion for summary judgment on the grounds of preemption. Since there can be no new trial if Griffith's claims are preempted, we turn first to this issue. We review *de novo* the district court's decision that Griffith's design defect claim is not preempted. *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998).

II.

FMVSS 208 establishes the types of passenger restraint systems which car and truck manufacturers must install in their vehicles. Its purpose "is to reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crash worthiness requirements . . . by specifying equipment requirements

4

for active and passive restraint systems." 49 C.F.R. § 571.208.S2 (1996). The parties agree that FMVSS 208 does not mandate any particular type of restraint, but rather requires manufacturers to choose from several specific options in installing a restraint system in their passenger cars and trucks. The parties further agree that, under FMVSS 208, General Motors was free to install either a completely automatic restraint system (automatic seat belts with or without air bags) or some form of belt system, either a lap belt for pelvic restraint or a shoulder/lap belt combination system. 49 C.F.R. §§ S42.1.1 and S42.1.2; 49 C.F.R. §571.209.S3. Thus, there is no disagreement that the regulatory scheme set out in FMVSS 208 provides manufacturers a set of passenger restraint options or that General Motors selected one of these options for installation in the Silverado in which Griffith was injured.

Griffith claims, however, that the lap belt only option chosen by General Motors for installation in the front center seat position of its Silverado truck constitutes a defective passenger restraint. General Motors contends that FMVSS 208, which specifically provides the lap belt only option, preempts this claim.

"Conflict preemption exists where state law actually conflicts with federal law, making it impossible to comply with both, or where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives

5

of Congress.'" *Irving*, 136 F.3d at 768 (citing *Lewis v. Brunswick Corp.,* 107 F.3d 1494, 1500 (11ᵗʰ Cir. 19–)).  In *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000), the Supreme Court found such conflict between  FMVSS 208 and the petitioner's claim that the defendant auto manufacturer, which selected one of FMVSS 208's no-air-bag options, should nonetheless have equipped its automobile with airbags.

In looking at the rule-making history of FMVSS 208, the Court noted that "DOT believed that ordinary manual lap and shoulder seat belts would produce about the same amount of safety as passive restraints, and at significantly lower costs – *if only auto occupants would buckle up.*"  529 U.S. at 880 (emphasis in original) (citing 49 Fed. Reg. at 28997-28998).  Since the evidence was overwhelming that they do not, however, DOT concluded that the best way to maximize passenger safety was to introduce passive restraint systems – including air bags – as alternatives, requiring them in only a small, but annually increasing, percentage of a manufacturer's fleet.[2]  DOT rejected an "all airbag" standard because "the public, for reasons of cost, fear, or physical intrusiveness, might resist

---

[2]The 1984 FMVSS 208 standard required manufacturers to equip only 10% of their fleet manufactured after September 1, 1986, with passive restraints.  This requirement increased in three annual stages, up to 100% of the new car fleet for cars manufactured after September 1, 1989.  529 U.S. at 879.

installation or use of any of the then-available passive restraint devises." *Id.* at 888

(citing 49 Fed. Reg. at 29001). FMVSS 208, therefore, reflected DOT's policy

judgment that a gradual phasing in of passive restraint systems would be the best

way in which to "lower costs, overcome technical safety problems, encourage

technological development, and win widespread consumer acceptance." *Id.* at 875.

The Court concluded that FMVSS 208 was deliberately designed to provide

manufacturers with passive restraint options, while maintaining traditional manual

restraint system options as well.

Petitioner's suit, on the other hand, would have established a rule that

manufacturers *must* install an airbag in every car. Since this result would conflict

with DOT's judgment that "safety would best be promoted if manufacturers

installed *alternative* protection systems in their fleets rather than one particular

system in every car," *Id.* at 881 (citation omitted), the Court held that it was

preempted.

Prior to *Geier*, in 1998, we reached this same conclusion. In considering a

similar claim of design defect, we held that a "suit against Defendants for their

exercise of an option provided to Defendants by FMVSS 208 conflicts with federal

law and, thus, is [impliedly] preempted." *Irving*, 136 F.3d at 769. After *Geier* was

decided, we rejected the argument that it somehow undermined *Irving*, and held

7

that, under both *Geier* and *Irving,* a suit seeking to impose liability on a car or truck manufacturer for selecting a vehicle restraint system specifically authorized by FMVSS 208 is in conflict with and impliedly preempted by it. *James v. Mazda Motor Corp*, 222 F.3d 1323, 1326 (11th Cir. 2000).

Griffith contends, however, that *Geier*, *Irving*, and *James* are limited to claims seeking to force manufacturers to select some sort of passive restraint option for their vehicles.[3]  According to her, since FMVSS 208 provides for the gradual introduction of passive restraint systems into passenger cars and trucks, *Geier* merely holds that any state rule requiring passive restraints is preempted. She argues that there is no similar deliberate regulatory goal underlying the statutory option between a lap belt only restraint system, as installed in the front center seat of the Silverado, and a combination lap and shoulder belt system, which her lawsuit would establish as a rule of state law.  She concludes that her claim is not preempted because it does not stand as an "obstacle" to the achievement of the passive restraint objectives embodied in FMVSS 208.

---

[3]The plaintiff in *Geier* sought a rule requiring air bags.  Both *Irving* and *James* involved allegations that an automatic shoulder belt with a manual lap belt is defective because of the manual component.

The district court agreed, holding that, under *Geier, Irving,* and *James,* FMVSS 208 preempts only claims alleging design defect in the failure to install a passive restraint system.

We disagree. Although plaintiffs in those cases sought to require manufacturers to install passive restraints (air bags and fully automatic seat and lap belt systems), in none of them is the preemptive effect of FMVSS 208 analyzed as a function of a distinction between passive and manual restraint systems. Rather, both the Supreme Court and we framed the issue as one of intent. In implementing the Congressional mandate to reduce the number of vehicular deaths, did DOT intend to establish only certain minimum safety standards, beyond which a state would be free to require more, or did it deliberately design a regulatory scheme which provides specific passenger restraint options, no one of which would state law be free to foreclose?

In *Geier*, the Court found that the rule-making history of FMVSS 208 makes clear that DOT saw it not merely as a minimum standard, but as a comprehensive regulatory scheme. 529 U.S. at 874-75. DOT intended and expected FMVSS 208 to produce a mix of restraint devices, both passive and manual, in cars and trucks *Id.* at 879. DOT's own contemporaneous explanation of FMVSS 208 was that it believed this mix would maximize the likelihood that people would actually use

9

the passenger restraint systems installed in their cars and trucks.  529 U.S. 877

(citing 49 Fed. Reg. 29003 (1984)).[4]

Geier's suit, on the other hand, would have eliminated this "mix."  It would

have forced manufacturers (at least in the District of Columbia where the suit was

brought) to install air bags in their vehicles by establishing the rule that "no air

bag" is a passenger restraint design defect.  Since such a rule would conflict with

the purposes of the federal statute, the Court held that Geier's claim was

preempted.  *Id.* at 881.

Similarly, in *Irving*, the plaintiff claimed that the defendant manufacturer's

installation of an automatic shoulder belt with a manual lap belt – specifically

permitted by FMVSS 208 –  was a design defect.  We rejected this claim holding:

> Because Plaintiff sued Defendants for exercising an option explicitly
> permitted by Congress, a conflict exists between state and federal law
> if Plaintiff goes forward with this state law claim of defective design.
> *Taylor*, 875 F.2d at 827 ("[A] state cannot impose common law
> damages on individuals for doing what a federal act or regulation
> 'authorized them to do.'") Therefore, Plaintiff's suit against
> Defendants for their exercise of an option provided to Defendants by
> FMVSS 208 conflicts with federal law and, thus, is preempted.

*Irving*, 136 F.3d at 769.

---

[4]DOT even provided for recision of FMVSS 208's passive restraint
requirements if two-thirds of the states passed mandatory seat belt laws.  529 U.S.
at 880.

10

The Seventh Circuit has recently reached a similar result on a claim quite similar to Griffith's. *Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 382 (7th Cir. 2000). In that case, a bus driver argued that the bus he was driving when he was injured was defectively designed because it provided him with only a lap belt. In holding this claim preempted, the Seventh Circuit noted that the choices embedded in FMVSS 208 reflect DOT's recognition of the public's "strong aversion" to wearing seat belts. Under these circumstances:

> NHTSA's decision to leave the manufacturers . . . with the option of using a two point seat belt that met regulatory standards is quite understandable as a way of promoting safety by encouraging drivers to use the safety equipment that manufacturers install. But [plaintiffs'] proposal unequivocally requires a three point seat belt, a requirement that could reduce utilization and thereby undermine FMVSS 208's safety objectives. Perhaps the design would not in fact reduce seatbelt utilization, but that is not the point. The point is that, as in *Geier*, the decision to leave options open to bus manufacturers was made with specific policy objectives in mind. [Plaintiffs'] suit, if successful, would undermine that policy objective and is therefore pre-empted.

222 F.3d at 382. The court concluded that, under *Geier*, when a Federal Motor Vehicle Safety Standard leaves a manufacturer with a choice of safety device options, a state suit that depends on foreclosing one or more of those options is preempted. *Id.* at 383.

11

We agree. Griffith claims that General Motors' selection of a lap belt only design for its Silverado front center seat constitutes a design defect. If successful, her suit would foreclose an option specifically permitted by FMVSS 208. Therefore, it conflicts with that federal law and is impliedly preempted.

## III.

Griffith also claims that the district court erred in granting judgment to General Motors on her failure to warn claim. Inasmuch as this claim is tied to her claim of defect,[5] it too is preempted. *James*, 222 F.3d at 1327 (plaintiff's claim that manufacturer negligently failed to warn that automobile was dangerous unless manual lap belt was worn was preempted by FMVSS 208 which permitted this option); *Irving*, 136 F.3d at 769, 770 (because plaintiff's defective-design claim is preempted by FMVSS 208, there was no defect about which to warn). The grant of judgment on this claim was not error.

## IV.

---

[5]Although plaintiff claims that this claim is separate from and not dependent upon her claim of defect, her complaint clearly ties the two together. She states: "GM had the capacity to warn Plaintiff and other potential consumers of the risks and hazards of using the *defective* seat belts" and "GM neither warned nor attempted to warn purchasers . . of the *design* characteristics and *defects* of this vehicle." (emphasis added)

In her separate but consolidated appeal, Griffith contends that the district court abused its discretion in denying her motion to hold General Motors in contempt and for sanctions based upon its alleged failure to comply with Rule 26, Fed. R. Civ. P.[6] Griffith contends that General Motors failed to adequately disclose the prior cases in which its expert, Murray Mackay, had testified. Griffith also claims that General Motors failure to do so was a deliberate and conscious choice to conceal Mackay's prior testimony and deny her a fair trial.[7]

It appears from the record that, in September of 1998, pursuant to Rule 26(a)(2)(B), Fed. R. Civ. P., General Motors provided Griffith with Mackay's name, a report detailing his opinion on the design of the Silverado's restraint system, and the names of some 118 cases in which he had previously testified. Sometime prior to trial, Griffith noticed that the cases or depositions in which Mackay had testified were identified by name and state only, with no case numbers or other means of locating the cases.[8] Although Griffith's counsel contend that

---

[6]Griffith also appeals the district court's denial of her Rule 60 motion for a new trial, but this appeal is mooted by our holding that her design defect claim is preempted.

[7]In fact, Griffith claims that General Motors had "evil intentions."

[8]The rule requires the "listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Rule 26(a)(2)(B).

they made repeated efforts to secure this information without court involvement, which is commendable, the record reflects that they allowed the matter to continue unresolved for over two years.[9]

Finally, six weeks prior to trial, on August 2, 2000, and without ever having asked to district court to intervene,[10] Griffith filed a motion in limine seeking to exclude the testimony of Mackay on the grounds that General Motors had failed to adequately identify his prior testimony. The issue was briefed and argued during the pretrial conference held on September 15, 2000. The district court denied the motion but instructed General Motors to contact its expert and attempt to provide more complete information about his prior testimony. On September 21, 2000, General Motors provided Griffith with some additional information. It is this "instruction" that Griffith contends General Motors "willfully disobeyed."

During the trial, Griffith renewed her motion to exclude Mackay's testimony. Although expressing concern that the issue had never been resolved satisfactorily, the district court denied the motion, observing that "I am not willing

---

[9]In fact, Griffith did not request further identifying information on the cases listed in General Motors' Rule 26 disclosure until January of 2000.

[10]Griffith had filed a motion to compel *transcripts* of Mackay's prior testimony, but conceded later that it had no right to these.

14

. . . to exclude an expert who has been noticed from the beginning. I mean, this is not a surprise witness."

After trial, Griffith filed her motion to hold General Motors in contempt and for sanctions. In denying the motion, the district court found that General Motors' expert was "unable to provide more information," and denied the motion.

We do not commend either party on its efforts to resolve this dispute. General Motors would do well to make sure that, in the future, its Rule 26 disclosures, comport with both the spirit and the letter of the rule. Nonetheless, Griffith allowed this impasse to continue well beyond the point of good faith efforts to resolve the issue without court intervention, *never* moving for an order requiring any more detailed response under Rule 26. Griffith's last minute attempt to prevent General Motors' expert from testifying put the district court in the untenable position of having to exclude a witness identified for over two years and, in fact, deposed by the plaintiff, or continue a trial already in progress, an unpalatable solution. In view of these circumstances, we cannot say that the district court's denial of Griffith's motion for contempt and for sanctions was an abuse of discretion.

V.

For the foregoing reasons , we hold that Griffith's design-defect and failure to warn claims are preempted by FMVSS 208. We also hold that the district court's denial of Griffith's post-trial motion for contempt and sanctions was not an abuse of discretion.

VI.

Accordingly, Griffith's direct appeal, Case No. 01-11062, is DENIED. Griffith's appeal of the denial of her post-trial motion for new trial and for contempt and sanctions, Case No. 01-12408, is DENIED. General Motors' cross-appeal of the denial of its motion for summary judgment, Case No. 01-11457, is GRANTED. Based upon the foregoing, the final judgment entered in the district court in favor of General Motors, from which these appeals were taken, is AFFIRMED.